BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**CARLA GOWEN MCCLURG, OSB #165144**
Assistant United States Attorney
carla.mcclurg@usdoj.gov
**ALEXIS A. LIEN, OSB #110569**
Assistant United States Attorney
alexis.lien@usdoj.gov
1000 SW Third Ave., Suite 600
Portland, Oregon 97204-2902
Telephone:  (503) 727-1000
      Attorneys for Plaintiff United States of America


# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PENDLETON DIVISION


| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br>      Plaintiff, <br><br>   v. <br><br> **IDAHO POWER COMPANY**, an Idaho Corporation, and <br> **IDACORP INC**., an Idaho Corporation, <br><br>      Defendants. | Case No. 2:20-cv-2282 <br><br><br> **COMPLAINT** <br><br> **(Demand for Jury Trial)** |


     Plaintiff the United States of America ("United States") brings this action against

defendants Idaho Power Company ("Idaho Power") and IDACORP, Inc. ("IDACORP") for the

recovery of fire suppression costs and damages to federal property, including but not limited to

natural resources located on federal land, and pleads:


**COMPLAINT**                                                       **Page 1**

## INTRODUCTION

1.      This action arises from two fires in Baker County, Oregon that damaged United States property, including its natural resources, and caused the United States to incur substantial fire suppression costs and related damages.

2.      The first fire for which the United States seeks recovery is known as the "Powerline Fire."  The Powerline Fire ignited on May 31, 2014 near Alder Creek, Oregon in Baker County.  The Powerline Fire ignited after powerline structure parts from Idaho Power's Ontario-to-Quartz Transmission Line (Line No. 423, an overhead 138 kV powerline, hereinafter the "Line"), fell to the ground and ignited dry vegetation.

3.      The second fire for which the United States seeks recovery is known as the "Lime Hill Fire."  The Lime Hill Fire ignited on August 5, 2015 near Lime, Oregon in Baker County. The Lime Hill Fire also ignited after powerline structure parts from the same Idaho Power transmission line involved in the Powerline Fire fell to the ground and ignited dry vegetation.

4.      The United States brings this suit to recover the fire suppression costs, damages to federal land, including but not limited to its natural resources, and related damages incurred by the United States for the Powerline Fire and the Lime Hill Fire.

## PARTIES

5.      Plaintiff the United States owns various parcels of land in the State of Oregon, which are administered by various agencies, including the United States Department of Interior, Bureau of Land Management ("BLM") and the United States Department of Agriculture, Forest Service ("Forest Service").

6.      Defendant Idaho Power is a corporation organized and existing under the laws of the State of Idaho.  Idaho Power is authorized to do business in the State of Oregon.  Idaho

**COMPLAINT**                                                                                                     **Page 2**

Power is an electric utility that serves approximately 542,000 customers throughout a 24,000-square-mile area in southern Idaho and eastern Oregon.

7.     Defendant IDACORP is a corporation organized and existing under the laws of the State of Idaho.  IDACORP is a holding company comprised of Idaho Power; IDACORP Financial, a holder of affordable housing projects and other real estate investments; and Ida-West Energy, an operator of small hydroelectric generation projects.  Idaho Power is the primary subsidiary of IDACORP.  IDACORP is a publicly-traded company.  IDACORP does business in Oregon through Idaho Power.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1345.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).  The events that caused the United States' damages occurred in Baker County, Oregon.

## GENERAL ALLEGATIONS

### *Idaho Power's Aging Infrastructure*

9.     Idaho Power began operations with nine hydroelectric plants in 1916.  After 1916, Idaho Power's facilities continued to grow to try to keep pace with increasing demand for electricity.

10.     In 1928, Idaho Power built the portion of the Line running from Ontario, Oregon to Huntington, Oregon (the "Ontario-to-Huntington Line Portion"), which was authorized by the Federal Energy Regulatory Commission ("FERC") under Project No. 921 in 1929.

11.     In 1951, Idaho Power completed the portion of the Line running from Huntington, Oregon to Quartz Junction Substation, five miles southeast of Baker City, Oregon (the "Huntington-to-Quartz Portion").

**COMPLAINT**                                                                                    **Page 3**

12.    Idaho Power and IDACORP have known for years that Idaho Power's infrastructure is aging.   In 2012, 2013, 2014, 2015, 2016, 2017, 2018, and 2019 annual reports to shareholders of Idaho Power's parent company, IDACORP, they acknowledged: "A significant portion of Idaho Power's facilities were constructed many years ago, and thus require periodic upgrades and frequent maintenance."

### BLM's Right-of-Way Grant to Idaho Power

13.    The FERC license for the Ontario-to-Huntington Line Portion had a 50-year term, which ended in 1979.  The Ontario-to-Huntington Line Portion remained in use after 1979 on federal land for years without formal authorization.

14.    On October 4, 1951, BLM, through the Assistant Secretary of the Interior, granted Idaho Power permission to engage in construction on the BLM-owned land on which the Huntington-to-Quartz Line Portion resides.  This permitted Idaho Power to engage in construction on the Line prior to the formal issuance of a permit.  This construction resulted in the Ontario-to-Huntington Line Portion being combined with the Huntington-to-Quartz Line Portion to form the Line.

15.    On September 25, 1953, BLM issued a formal decision granting Idaho Power a right-of-way, not to exceed 50 years, for the construction, operation and maintenance of an electrical transmission line (the "Right-of-Way Grant").  Idaho Power had already built the Huntington-to-Quartz Line Portion on the land described in the Right-of-Way Grant (the "Right-of-Way").

16.    On March 23, 2004, BLM granted Idaho Power a renewal of the Right-of-Way Grant (the "Right-of-Way Renewal") through September 24, 2053.  *See* attached **Exhibit 1.**

17.    The Right-of-Way Renewal contained certain terms and conditions, including:

**COMPLAINT**                                                                                    **Page 4**

a.  Compliance with all applicable regulations contained in Title 43 Code of Federal Regulations parts 2800 through 2880 (Par. 4.a);

b.  Compliance with the stipulations set forth in Exhibit A to the Right-of-Way Renewal, including taking "such measures for prevention and suppression of fire on the grant area and adjacent public lands or public lands used or traversed by the holder in connection with operations as are required by applicable laws and regulations"(Par. 4.d); and

c.  Exercising rights granted in the Right-of-Way Renewal "in a manner so as to ensure protection of the environment and the health and safety of the public." (Par. 4.f).

18.  On May 9, 2006, BLM received an application from Idaho Power to amend the Right-of-Way to include the Ontario-to-Huntington Line Portion with the Huntington-to-Quartz Line Portion (the "Amendment Application") seeking authorization of the Line under a single right-of-way.

19.  On September 30, 2007, BLM granted the Amendment Application, thereby amending the Right-of-Way Grant to include the Ontario-to-Huntington Line Portion in the Right-of-Way through December 31, 2015 (the "Amended Right-of-Way Grant").  *See* attached **Exhibit 2.**

20.  The Amended Right-of-Way Grant contained certain terms and conditions, including:

a.  Compliance with all applicable regulations contained in Title 43 Code of Federal Regulations parts 2800 through 2880 (Par. 4.a);

b.  Performing "all operations in a good and workmanlike manner so as to ensure protection of the environment and the health and safety of the public" (Par. 4.f); and

c.  Taking "such measures for prevention and suppression of fire on the grant area and adjacent public lands or public lands used or traversed by the holder in connection with operations as are required by applicable laws and regulations." (Par. 4.k).

*The Powerline Fire*

21.  On May 31, 2014, the Powerline Fire ignited near Durkee, Oregon in the area surrounding an Idaho Power powerline structure (Structure No. 443 on the Line, hereinafter "Structure 443") and within the Right-of-Way.

22.  The Powerline Fire burned approximately 5 acres of land, including public land managed by the BLM.  BLM suppressed the fire and incurred suppression costs.

23.  BLM fire investigators promptly investigated the Powerline Fire.  Structure 443 was on fire when fire investigators arrived on May 31, 2014.   One of the pole tops of Structure 443 separated from the pole structure where it connected with the tension insulators and was suspended from the power line when investigators were at the scene as shown in the photo below:



24.    Structure 443 failed and caused the Powerline Fire.

25.    The Powerline Fire ignited on Structure 443 near the top of one of the three poles where the tension insulators connected to the pole.

26.    BLM fire investigators considered and eliminated other potential causes of the ignition of the Powerline Fire besides a failure of Structure 443.  BLM fire investigators determined that the Powerline Fire was not caused by smoking, campfires, equipment use,

burning debris, arson, a railroad, children, or fireworks.  At the time the Powerline Fire ignited, no lightning was detected within 14 miles of the area of ignition.

27.    At the time of the Powerline Fire, Structure 443 was approximately 65 years old and showed significant weathering and damage, including a large woodpecker hole (top of the pole on the right) and deep cracks from weathering as shown in the photo below:



28.    Structure 443 was constructed between approximately 1949 and 1951.  Structure 443 is a wood pole, H-Frame structure with 28-foot cross-arms designed to carry one three-phase, three wire circuit using suspension insulators.  Structure 443 was constructed with three class 3 wood poles that were 55, 60, and 65 feet long.

29.    Idaho Power's records reflect that no maintenance or construction work had been performed on Structure 443 since at least approximately 2005.

### *The Lime Hill Fire*

30.    On August 5, 2015, the Lime Hill Fire ignited on the Line in the area surrounding an Idaho Power powerline structure (Structure No. 304 on the Line, hereinafter "Structure 304")

and within the Right-of-Way.  The Lime Hill Fire burned for several days and eventually was declared contained on August 11, 2015.

31.     The Lime Hill Fire burned approximately 2,592 acres of federal land managed by the BLM and approximately 9,337 acres of privately-owned land.  The federal land burned by the Lime Hill Fire included sage-grouse habitat, critical winter range for elk and deer, and grazing allotments and pastures.

32.     The Lime Hill Fire threatened the City of Huntington, which had to issue a Level One Evacuation Notice.  This notice required residents to be prepared to evacuate at a moment's notice.   As the Lime Hill Fire raged, Interstate 84 was closed between Ontario and Pendleton, Oregon.

33.     BLM and USFS suppressed the Lime Hill Fire and incurred significant costs through their efforts.  BLM also sustained property damage, including natural resource damage, and significant stabilization and rehabilitation costs as a result of the Lime Hill Fire.  Despite the BLM's efforts to rehabilitate the federal land burned by the Lime Hill Fire, the 2,386 acres of sage-grouse habitat burned by the Lime Hill Fire could not be restored due to the unique ecology of sagebrush, resulting in a diminution of the land's fair market value and natural resource damages.

34.     BLM fire investigators promptly investigated the Lime Hill Fire.  Structure 304 was on fire when fire investigators were on the scene on August 5, 2015.  The east pole of Structure 304, a three-pole structure, was burning where the tension insulators connected to the pole.  The top section of the pole, where the transmission line and tension insulators connected to the pole, had separated from the pole and dangled from wires connecting the three-pole structure, as shown in the photo below:

**COMPLAINT**                                                                                    **Page 9**



35.    Structure 304 failed and caused the Lime Hill Fire.

36.    The Lime Hill Fire ignited on Structure 304 near the top of one of the three poles where the tension insulators connected to the pole – like the Powerline Fire.

37.    BLM fire investigators considered and eliminated other potential causes of the ignition of the Lime Hill Fire besides a failure of Structure 304.  BLM fire investigators determined that the Lime Hill Fire was not caused by smoking, campfires, equipment use, burning debris, arson, a railroad, children, or fireworks.  No lightning was detected within the area of ignition of the Lime Hill Fire around the time the fire ignited.

38.    At the time of the Lime Hill Fire, Structure 443 was approximately 65 years old and showed significant weathering and damage, including dry rot, numerous cracks, and numerous woodpecker holes as shown in the photos below of the center pole of Structure 304:





39.    Structure 304 was constructed between approximately 1949 and 1951.  Structure

304 is a wood pole, H-Frame structure with 28-foot cross-arms designed to carry one three-

phase, three wire circuit using suspension insulators.  Structure 304 was constructed with three

60 foot class 2 and 3 wood poles.

40.     Idaho Power's records reflect that no maintenance or construction work had been

performed on Structure 304 since at least approximately 2005.

41.     Pursuant to applicable utility rules and regulations, Idaho Power is required to:

(i) conduct "detailed inspections" of its overhead facilities to identify violations of Oregon

Public Utilities Commission ("Oregon PUC") Safety Rules every ten years pursuant to OAR

860-024-0011(1)(b), and (ii) inspect all of its transmission line structures annually pursuant to a

Transmission Maintenance Inspection Plan.

### *Idaho Power's 2008 Inspection of the Line*

42.     On February 12, 2007, Idaho Power hired Pole Maintenance Company to conduct

wood pole inspections and ground line treatments as part of Idaho Power's 10-year inspection.

43.     Pole Maintenance Company conducted wood pole inspections and ground line

treatments on the Line in June 2008 (the "2008 Inspection").

44.     Among other things, during the 2008 Inspection, Pole Maintenance Company

found and reported to Idaho Power:

  a.  Woodpecker holes on at least two wood pole structures between Structure

      Nos. 303 and 312, including the center pole of Structure 304 (involved in the

      Lime Hill Fire);

  b.  Woodpecker holes on at least four wood pole structures between Structure

      Nos. 439 and 447;

  c.  Issues with four wood pole structures between Structure Nos. 303 and 312

      sufficient to designate them as "rejected" and in need of remediation; and

**COMPLAINT**                                                               **Page 12**

d.   Issues with four wood pole structures between Structure Nos. 439 and 447 sufficient to designate them as "rejected" and in need of remediation, including Structure No. 443 (involved in the Powerline Fire).

45.   Despite the issues Pole Maintenance Company reported to Idaho Power regarding Structure Nos. 304 and 443 in its report of the 2008 Inspection, Idaho Power's records do not show that it took action to address those issues.  In fact, on the date of the Lime Hill Fire, as shown in the photos in paragraph 38 above, the center pole of Structure 304 exhibited significant woodpecker damage on the center pole consistent with the 2008 Inspection – approximately seven years before the Lime Hill Fire.

### *Idaho Power's Cursory Annual Inspections*

46.   Four Idaho Power transmission line patrolmen are responsible for routine annual inspections of all of Idaho Power's approximately 4,830 pole-miles of high-voltage transmission lines and structures.  These annual inspections are done by ground and/or by air.

47.   Each Idaho Power transmission line patrolman is assigned a territory and inspects transmission lines within his/her territory alone.  Idaho Power's transmission line patrolmen are stationed in Payette, Boise, Twin Falls, and Pocatello.

48.   When inspecting transmission lines, Idaho Power transmission line patrolmen should note and report defects of powerline structures and other equipment on their lines and report them in Idaho Power's tracking system.

49.   According to Idaho Power's 2015 Transmission Maintenance Inspection Plan:

The air patrols/inspections are used to identify obvious line-threatening defects and defects that cannot be seen from the ground.  Ground patrol/inspections are made using four-wheel-drive vehicles, all-terrain vehicles (ATV), utility terrain vehicles (UTV), or on foot.

**COMPLAINT**                                                                 **Page 13**

50.     Idaho Power transmission line patrolmen also sometimes conduct ground inspections by driving past the lines in their trucks.  For example, one Idaho Power transmission line patrolman testified in another matter that he sometimes conducts a ground inspection from his truck and does not have to get out of the truck.

51.     There are 538 transmission line structures on the Line, which are numbered sequentially from number 1 through 538.  Many of the structures on the Line do not have access roads and can only be accessed on foot or by an ATV or UTV.

52.     According to Idaho Power's records regarding Structures 304 and 443, an Idaho Power transmission line patrolman performed annual ground inspections on Structures 304 and 443 on the same day in at least 2009, 2010, and 2015.

53.     Structures 304 and 443 are located approximately 16 miles apart on the Line.  A total of 138 Idaho Power structures span the Line between Structures 304 and 443, traversing hills and other natural obstacles.

54.     Idaho Power's records show that an Idaho Power transmission line patrolman performed annual ground inspections on many electrical transmission line structures on the Line in short periods of time, including:

   a.  In 2011:

      i.  Structures 1 through 210 within three days (March 21- 24, 2011);

      ii.  Structures 211 through 441 within three days (April 4 - 7, 2011);

      iii.  Structures 442 through 540 over the course of two days (April 18 - 19, 2011);

   b.  In 2012:

      i.  Structures 1 through 200 within three days (March 25 – 28, 2012);

**COMPLAINT**                                                                 **Page 14**

      ii.   Structures 201 through 430 within three days (April 9 – 12, 2012);

      iii.  Structures 431 through 540 within three days (April 16-19, 2012); and

  c.  In 2013:

      i.   Structures 1 through 280 within three days (April 8-11, 2013); and

      ii.   Structures 281 through 540 within three days (April 15-18, 2013).

55.     The Idaho Power transmission line patrolmen who, according to Idaho Power's records, performed annual ground inspections of structures on the Line alone on numerous structures per day from at least 2009 through at least 2015, did not inspect the transmission line structures with reasonable care required under the circumstances.

56.     According to Idaho Power's records, an Idaho Power transmission line patrolman conducted a ground inspection of Structure 443 on January 30, 2014 – less than 5 months before the Powerline Fire ignited on Structure 443.

57.     Despite the significant woodpecker damage evident to BLM investigators on the wood poles of Structure 443 on May 31, 2014, the date of the Powerline Fire, Idaho Power's records show that the Idaho Power transmission line patrolman did not report any defects on Structure 443 during the ground inspection on January 30, 2014.  Based on the age and condition of Structure 443, including the visible cracking and woodpecker damage evident to BLM investigators on the wood poles of Structure 443 on May 31, 2014, and, based on its records, Idaho Power's apparent failure to fix the wood pole identified as rejected during the 2008 Inspection, Idaho Power's transmission line patrolman did not inspect Structure 443 with reasonable care required under the circumstances.

58.    Following the Powerline Fire, Idaho Power did not conduct a thorough inspection of at least Structure 304 (involved in the Lime Hill Fire) or perform any maintenance or construction work on at least Structure 304.

59.    According to Idaho Power's records, an Idaho Power transmission line patrolman conducted an annual ground inspection of Structure 304 on April 13, 2015 – less than four months before the Lime Hill Fire ignited on Structure 304.  The April 13, 2015 inspection of Structure 304 was cursory at best.

60.    The Idaho Power transmission line patrolman who inspected Structure 304 on April 13, 2015 also inspected Structure 443 the same day, even though Structures 304 and 443 are separated by approximately 16 miles of hills and other natural obstacles.  According to Idaho Power's records, the Idaho Power transmission line patrolman inspected at least 140 transmission line structures on April 13, 2015.

61.    Despite the dry rot, significant cracking, and woodpecker damage observed by BLM investigators on the wood poles of Structure 304 on August 5, 2015 (the date of the Lime Hill Fire) and the woodpecker damage on Structure 304 reported after the 2008 Inspection (and still unaddressed by the time of the Lime Hill Fire), Idaho Power's records show that the Idaho Power transmission line patrolman did not report any defects on Structure 304 during the ground inspection on April 13, 2015.

62.    Idaho Power had been aware of woodpecker damage on at least the center pole of Structure 304 since at least 2008, but Idaho Power took no action to address the woodpecker damage.  On August 5, 2015, BLM investigators observed and photographed woodpecker

**COMPLAINT**                                                                        **Page 16**

damage on Structure 304, including at least the woodpecker holes on the center pole shown in the photo below:



63.     BLM fire investigators observed significant cracking, weathering, and woodpecker damage on other Idaho Power wood structures on the Line in December 2015, including:

a. Structure 446 as pictured below:



b. Structure 445 as shown below:



c.    Structure 435, exhibiting a woodpecker hole nearly penetrating an entire pole
(extending the length of the twig) as in the photo shown below:



64.    During the 2008 Inspection, Pole Maintenance Company observed woodpecker
holes on all three wood poles of Structure 446 and reported them to Idaho Power.  Based on
BLM investigator's observations in December 2015 and the photo in paragraph 63.a above,
Idaho Power apparently took no action with respect to the woodpecker holes reported to it
following the 2008 Inspection on Structure 446.

65.    According Idaho Power's records, an Idaho Power transmission line patrolman
performed ground inspections on Structures 435, 445, and 446 on April 13, 2015 and reported no
defects.  BLM fire investigators observed significant cracking, weathering, and woodpecker
damage on Structures 435, 445, and 446 as shown in paragraph 63 above approximately eight
months after the April 13, 2015 ground inspection was purportedly performed by an Idaho Power
transmission line patrolman.

*Idaho Power's Actions, Failures to Act, and Duties*

66.     Idaho Power had an affirmative duty to prevent wildfires in its operation, inspection, and maintenance of its powerline structures and equipment.

67.     Idaho Power maintained and inspected its equipment and structures, including Structures 304 and 443, in a negligent manner.  Idaho Power did not inspect and/or maintain Structures 304 and 443 frequently and/or thoroughly enough to detect and/or correct issues or defects.

68.     The Oregon PUC, pursuant to O.R.S. § 757.035, has the power to issue rules and regulations regarding the construction and maintenance of every line, plant, system, equipment, or apparatus in such a manner as to protect and safeguard the health and safety of all employees, customers, and the public.

69.     Consistent with O.R.S. § 757.035, the Oregon PUC promulgated Oregon Administrative Rule ("OAR") 860-024-0010.  At the time of the Powerline Fire and the Lime Hill Fire, OAR 860-024-0010 provided that "[e]very operator shall construct, operate, and maintain electrical supply and communication lines in compliance with the standards prescribed by the 2012 Edition of the National Electrical Safety Code approved June 3, 2011, by the American National Standards Institute."

70.     Section 214(A)(2) of the 2012 Edition of the National Electrical Safety Code ("NESC") required that "[l]ines and equipment shall be inspected at such intervals as experience has shown to be necessary."  Idaho Power should have inspected the structures on the Line more vigorously and at more frequent intervals than once a year based on at least: the many issues reported by Pole Maintenance Company to Idaho Power following the 2008 Inspection,

**COMPLAINT**                                                                                          **Page 20**

including the issues noted with respect to Structures 304 and 443, and its experience with

Structure 443 failing and causing the Powerline Fire.

71.    Section 214(A)(3) of the 2012 NESC further required that "[w]hen considered

necessary, lines and equipment shall be subjected to practical tests to determine required

maintenance."  Based on the age and noted damage on the Line (consistent with the 2008

Inspection), Idaho Power should have tested all structures on the Line, including Structures 304

and 443, in a manner to ensure the integrity of all wood and electrical components.  In addition,

after Structure 443 failed and caused the Powerline Fire, Idaho Power should have tested all

Structures on the Line in a manner to ensure the integrity of all wood and electrical components.

72.    As the grantee of a BLM right-of-way, Idaho Power was required to:

   a.    To the extent practicable, comply with all existing and subsequently enacted,

         issued, or amended Federal laws and regulations and State laws and

         regulations applicable to the authorized use (43 C.F.R. § 2805.12(a)(1)); and

   b.    Do everything reasonable to prevent and suppress wildfires on or in the

         immediate vicinity of the right-of-way area (43 C.F.R. § 2805.12(a)(4)).

73.    Pursuant to 43 C.F.R. § 2808.10, trespass to public lands or resources without a

required authorization, or in a way that is beyond the scope and terms of an authorization, is a

prohibited act.  Idaho Power's negligent acts that caused the Powerline Fire and the Lime Hill

Fire were not authorized and/or exceeded the scope and terms of an authorization.

74.    Causing a fire to be ignited by any source, other than a campfire or the industrial

flaring of gas is prohibited on public lands managed by BLM or other Department of Interior

agencies, unless permitted in writing by the authorized officer pursuant to 43 C.F.R. § 9212.1(a).

**COMPLAINT**                                                      **Page 21**

An authorized officer did not permit in writing Idaho Power to cause fires to be ignited on public lands.

75.     Burning timber, trees, slash, brush, tundra or grass, except as used in campfires, is prohibited on public lands managed by BLM or other Department of Interior agencies, unless permitted in writing by the authorized officer pursuant to 43 C.F.R. § 9212.1(c).  An authorized officer did not permit in writing Idaho Power to burn timber, trees, slash, brush, tundra or grass on public lands.

76.     In Oregon, pursuant to ORS § 477.740, a person commits the offense of unlawful use of fire if the person "unlawfully sets on fire, or cause to be set on fire, any grass, grain, stubble, or other material being or growing on any lands within the state."

### IDACORP's Profits

77.     Idaho Power's utility operations constitute nearly all of IDACORP's business operations.

78.     As the primary subsidiary of IDACORP, Idaho Power's revenues are the primary source of IDACORP's operative revenues and net income.

79.     IDACORP's net earnings have steadily increased since at least 2011.  In fact, IDACORP's net earnings have been strong enough to issue annual dividends to common stock shareholders since at least 2011, steadily increasing the dividend payments over time.

80.     In 2011, IDACORP adopted a policy that provided for a target long-term dividend payout ratio of between 50 and 60 percent of sustainable IDACORP earnings.  Accordingly, in its 2012 annual report to shareholders, IDACORP explained that, as Idaho Power transitioned to 2013 and into 2014, it would "focus on optimizing operations and managing growth in expenses

in an effort to achieve or exceed a rate or return reflective of those allowed by the [Idaho Public Utilities Commission] and [Oregon PUC]."

81.    IDACORP's net income increased by $9.4 million from 2012 to 2013, resulting in a 14.6% increase in dividends declared per common share in 2013.

82.    IDACORP's net income again increased by more than $10 million from 2013 to 2014, resulting in a 12.1% increase in dividends declared per common share in 2014.

83.    IDACORP continued to experience net income growth in 2015 compared to 2014 and, once again, increased dividends to common stock shareholders by over 8 percent.

84.    While IDACORP enjoyed net earnings in 2014 and 2015 and issued dividends to shareholders, the United States paid significant costs to suppress the wildfires that ignited as a result of Idaho Power's negligent inspections and maintenance of its aging and damaged transmission lines.

85.    IDACORP shifted the burdens of Idaho Power's aging and damaged infrastructure onto the United States and to the public.  IDACORP and its shareholders benefited from increasingly large profits while Idaho Power's aging and damaged infrastructure threatened and later damaged federal property, the public, and the environment.

## CLAIMS FOR RELIEF

### First Claim for Relief

### Against Defendant Idaho Power

**(Count One: Common-Law Negligence)**

86.    The United States incorporates by reference all paragraphs of this Complaint set out above as if fully set forth herein.

87.     Idaho Power had a duty to use reasonable care to inspect, maintain, and operate its powerline equipment to prevent wildfires.

88.     The Powerline Fire started as a direct and proximate result of Idaho Power's breach of duty and negligence.

89.     The Lime Hill Fire started as a direct and proximate result of Idaho Power's breach of duty and negligence.

90.     Idaho Power's conduct created a foreseeable and unreasonable risk of harm to the United States.

91.     As the owner of the land on which Structures 304 and 443 are located, as well as land surrounding it, the United States belongs to a class of persons who foreseeably might be injured by Idaho Power's acts or omissions.  Additionally, as United States agencies are tasked with responding to wildfires, including in the area in which the Powerline Fire and the Lime Hill Fire ignited, the United States belongs to a class of persons who foreseeably might be injured by Idaho Power's acts or omissions.

92.     Idaho Power's negligent acts and/or omissions caused the Powerline Fire.

93.     Idaho Power's negligent acts and/or omissions caused the Lime Hill Fire.

94.     Separately and independently, the United States is entitled to a presumption and inference of negligence under the doctrine of *res ipsa loquitur* because: (1) the ignition of Powerline Fire and the Lime Hill Fire were incidents of the kind that do not ordinarily occur in the absence of someone's negligence when all other potential causes of ignition are ruled out; (2) Idaho Power was in exclusive possession and control of Structures 304 and 443 on which the Powerline Fire and the Lime Hill Fire ignited and the area surrounding them under the Right-of-Way, making it more probable than not that the negligence was that of Idaho Power; and (3) the

United States did not cause or contribute to the ignition of the Powerline Fire or the Lime Hill Fire.

95.     As a result of the Powerline Fire and the Lime Hill Fire, the United States suffered damages in an amount to be proved at trial.

### (Count Two: Negligence *Per Se*)

96.     The United States incorporates by reference all paragraphs of this Complaint set out above as if fully set forth herein.

97.     Pursuant to the doctrine of negligence *per se*, Idaho Power owed a duty to comply with laws, rules, and regulations and is liable for violating the laws intended to prevent wildfires such as the Powerline Fire and the Lime Hill Fire.

98.     Idaho Power violated at least the following federal and state statutes, rules, and regulations, which serve as the underlying violations for liability under the doctrine of negligence *per se*:

        a.   43 C.F.R §§ 2808.10, 2805.12(a)(1), 2805.12(a)(4), 9212.1(a), 9212.1(c);

        b.   O.R.S. § 477.740; and

        c.   OAR 860-024-0010.

99.     Idaho Power violated these statutes, rules, and regulations by failing to operate, inspect, and maintain its equipment, including Structures 304 and 443, to prevent wildfires from igniting on or near its equipment.

100.     These statutes, rules, and regulations were promulgated to prevent the ignition of wildfires like the Powerline Fire and the Lime Hill Fire.

101.     Idaho Power's conduct created a foreseeable and unreasonable risk of harm to the United States.

102.    Idaho Power's violation of the above-referenced statutes, rules, and regulations caused the Powerline Fire and the Lime Hill Fire to ignite and was the factual cause of substantial harm to the United States.

103.    The United States is one of the classes of persons or entities for whose protection the statutes, regulations, and rules were adopted.

104.    As a result of Idaho Power's negligence, the United States incurred damages in an amount to be proved at trial.

**Second Claim for Relief**

**Against Defendant Idaho Power**

**(Trespass by Fire)**

105.    The United States incorporates by reference all paragraphs of this Complaint set out above as if fully set forth herein.

106.    The Lime Hill Fire and the Powerline Fire damaged property owned by the United States.

107.    Idaho Power negligently caused the Powerline Fire and the Lime Hill Fire to ignite and both threaten and spread to lands of the United States.

108.    The United States did not give Idaho Power permission to cause the Powerline Fire or the Lime Hill Fire or to allow it to spread so as to endanger or enter upon the United States' property.

109.    As a direct, proximate, and substantial cause of Idaho Power's trespass by fire, the United States suffered damages in an amount to be proved at trial, including but not limited to fire suppression costs, burned area rehabilitation costs, and property damage, including natural resource damages.

**COMPLAINT**                                                                                                                **Page 26**

**Third Claim for Relief**

**Against Defendant Idaho Power**

**(Common Law Nuisance)**

110.    The United States incorporates by reference all paragraphs of this Complaint set out above as if fully set forth herein.

111.    The Lime Hill Fire was a public nuisance under common law because it: (a) threatened and damaged federal lands and resources; (b) interfered with the use and enjoyment of public lands; and (c) harmed the United States.

112.    As a result of Idaho Power's nuisance, the United States suffered damages in an amount to be proved at trial.

**Fourth Claim for Relief**

**Against Defendant Idaho Power**

**(Breach of Contract)**

**(Count 1: Violation of the Terms of the Right-of-Way Renewal)**

113.    The United States incorporates by reference all paragraphs of this Complaint set out above as if fully set forth herein.

114.    Idaho Power operates its electric utility equipment on the United States' land pursuant to the Right-of-Way Renewal, which includes certain terms and conditions.

115.    The Right-of-Way Renewal requires Idaho Power to exercise its rights granted therein "in a manner so as to ensure protection of the environment and the health and safety of the public."  Idaho Power did not comply with this requirement and breached the Right-of-Way Renewal because it failed to operate, inspect, and maintain its power equipment, including

Structures 304 and 443, in a manner so as to ensure protection of the environment and the health and safety of the public.

116.    The Right-of-Way Renewal requires Idaho Power to comply with all applicable regulations contained in Title 43 Code of Federal Regulations, parts 2800 through 2880.  Idaho Power breached the terms of the Right-of-Way Renewal by violating at least 43 C.F.R. §§ 2808.10, 2805.12(a)(1), and 2805.12(a)(4).

117.    The Right-of-Way Renewal also requires Idaho Power to take "such measures for prevention and suppression of fire on the grant area and adjacent public lands or public lands used or traversed by the holder in connection with operations as are required by applicable laws and regulations."   Idaho Power breached the terms of the Right-of-Way Renewal by violating at least:

      a.  43 C.F.R §§ 2808.10, 2805.12(a)(1), 2805.12(a)(4), 9212.1(a), 9212.1(c);

      b.  O.R.S. § 477.740; and

      c.  OAR 860-024-0010.

118.    The United States was in compliance with the terms of the Right-of-Way Renewal at all times relevant hereto.

119.    As a result Idaho Power's breach of the terms of the Right-of-Way Renewal, the United States suffered damages in an amount to be proved at trial.

**(Count 2: Violation of the Terms of the Amended Right-of Way Grant)**

120.    The United States incorporates by reference all paragraphs of this Complaint set out above as if fully set forth herein.

121.    Idaho Power operates its electric utility equipment on the United States' land pursuant to the Amended Right-of-Way Grant, which include certain terms and conditions.

122.    The Amended Right-of-Way Grant also requires that Idaho Power perform "all operations in a good and workmanlike manner so as to ensure protection of the environment and the health and safety of the public."  Idaho Power did not comply with this requirement and breached the Amended Right-of-Way Grant because it failed to operate, inspect, and maintain its power equipment, including Structures 304 and 443, in a good and workmanlike manner so as to ensure protection of the environment and the health and safety of the public.

123.    The Amended Right-of-Way Grant requires Idaho Power to comply with all applicable regulations contained in Title 43 Code of Federal Regulations, parts 2800 through 2880.  Idaho Power breached the terms of the Right-of-Way Renewal and the Amended Right-of-Way Grant by violating at least 43 C.F.R. §§ 2808.10, 2805.12(a)(1), and 2805.12(a)(4).

124.    The Amended Right-of-Way Grant also requires Idaho Power to take "such measures for prevention and suppression of fire on the grant area and adjacent public lands or public lands used or traversed by the holder in connection with operations as are required by applicable laws and regulations."   Idaho Power breached the terms of the Amended Right-of-Way Grant by violating at least:

>    d.    43 C.F.R §§ 2808.10, 2805.12(a)(1), 2805.12(a)(4), 9212.1(a), 9212.1(c);
>
>    e.    O.R.S. § 477.740; and
>
>    f.    OAR 860-024-0010.

125.    The United States was in compliance with the terms of the Amended Right-of-Way Grant at all times relevant hereto.

126.    As a result of Idaho Power's breach of the terms of the Amended Right-of-Way Grant, the United States suffered damages in an amount to be proved at trial.

**Fifth Claim for Relief**

**Against Defendant IDACORP**

**(Unjust Enrichment)**

127.   The United States incorporates by reference all paragraphs of this Complaint set out above as if fully set forth herein.

128.   IDACORP received substantial net income from Idaho Power's operations leading up to and following the Powerline Fire and the Lime Hill Fire.

129.   The Powerline Fire and the Lime Hill Fire were caused by the negligence of IDACORP's primary subsidiary, Idaho Power.  Specifically, Idaho Power failed to exercise reasonable care to inspect, maintain, and operate its aging electrical equipment located on the Line, including Structures 304 and 443.

130.   IDACORP knew and/or should have known that Idaho Power's infrastructure was aging and in need of replacement and/or maintenance.  IDACORP knew and/or should have known that Idaho Power's aging infrastructure required more frequent and/or detailed inspections than Idaho Power was conducting.

131.   IDACORP was unjustly enriched each time it took net profits from Idaho Power, rather than investing them in Idaho Power's aging infrastructure, at great expense to the United States, including property damage and fire suppression and related costs, in an amount to be proved at trial.

**PRAYER FOR RELIEF**

WHEREFORE, the United States demands that judgment be entered in its favor as follows:

**COMPLAINT**                                                                                                    **Page 30**

A.    Against Defendant Idaho Power for:

  i.    Payment of suppression costs and property damage, including natural resource damages, and burned area rehabilitation costs arising from the Powerline Fire and the Lime Hill Fire, including but not limited to: the costs of fire suppression; costs of rehabilitation and restoration of the burned areas; loss of income from grazing permits and/or other users of burned land; diminution in property value; and loss of habitat, environmental values, fencing, and other structures;

  ii.    Recovery of the United States' investigative, accounting, collection, and administrative costs arising from the Powerline Fire and the Lime Hill Fire;

  iii.    Interest and penalties pursuant to the Debt Collection Act, 31 U.S.C. § 3717;

  iv.    All other applicable costs, fees, and interest; and

  v.    Such further relief as this Court deems just and equitable;

B.    Against Defendant IDACORP for:

  i.    Disgorgement of all net income received by IDACORP from Idaho Power while Idaho Power was not exercising reasonable care in operating, inspecting, or maintaining the Line sufficient to compensate the United States for:

   a.    Payment of suppression costs and property damage, including natural resource damages, and burned area rehabilitation costs arising from the Lime Hill Fire, including, but not limited to: the

**COMPLAINT**                    **Page 31**

costs of fire suppression; costs of rehabilitation and restoration of

the burned areas; loss of income from grazing permits and/or other

users of burned land; diminution in property value; and loss of

habitat, and environmental values, and fencing and other

structures;

b.   The recovery of the United States' investigative, accounting,

collection, and administrative costs arising from the Lime Hill

Fire; and

c.   Interest and penalties pursuant to the Debt Collection Act, 31

U.S.C. § 3717;

ii.   All other applicable costs, fees, and interest; and

iii.   Such further relief as this Court deems just and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

The United States demands a jury trial in this case.

DATED:  December 30, 2020          Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney


  s/ Carla Gowen McClurg
**CARLA GOWEN MCCLURG, OSB #165144**
Assistant United States Attorney
**ALEXIS A. LIEN, OSB #110569**
Assistant United States Attorney